Louisa Truitt *vs.* Charles W. Cullen, Executor of John Shipley Phillips, deceased.

*Appeal from Register of Wills— Will—Insanity—Alcoholic Dementia—Testamentary Capacity—Failure of Memory.*

1. When the objection to the will is that long continued habits of intemperance have permanently impaired the mind, and destroyed the memory of the testator, and thereby deprived him of testamentary capacity, it must be of such a character as to deprive him of judgment and reason, and must exist at the precise time of executing the will.

2. It will not be said that a will which makes the same provision for a wife which the law prescribes in the case of intestacy, indicates insanity on the part of the testator.

(*Opinion delivered October 7, 1901.*)

Lore, C. J., and Spruance, J., sitting.

(Boyce, J., being a cousin of the testator and also near of kin to Louisa Truitt, one of the heirs at law and the petitioner for review, declined to take part in the decision.)

*Robert Pennington* and *Andrew C. Gray* for appellant.

*Charles M. Cullen* and *Charles F. Richards* for respondent.

Superior Court, Sussex County, April Term, 1901.

Appeal from the Decree of the Register of Sussex County, affirming the allowance of the will of the decedent in proceedings upon a petition for review.

Case submitted without argument upon the testimony, exhibits and briefs of counsel. The will bears date July 23, 1897 ; was admitted to probate April 22, 1898; petition for review filed August 18, 1900; allowance of the will affirmed by the Register June 28, 1901.

LORE, C. J.: — The appellant claims that the will should be rejected for the reason that from the evidence it appears that on July 23d, 1897, the day the will was executed, the testator was not of sound disposing mind and memory; that he was incapable of making a will because of alcoholic dementia.

We have carefully examined and considered the voluminous testimony, the exhibits, and the very thorough briefs of the respective counsel.

The testimony is quite conflicting. A large portion of it, is taken up with the opinions of the respective witnesses as to the testamentary capacity of the deceased. Such opinions of witnesses, whether of experts or otherwise, are of value, mainly so far as they are supported by the facts disclosed. The true solvent in such cases lies in the conditions and facts contained in the testimony.

In *Ball, Executor, vs. Kane, 1 Pennewill, 90,* the Court ruled that "When the objection to the will is that long continued habits of intemperance have permanently impaired the mind, and destroyed the memory of the testator and thereby deprived him of testamentary capacity; it must be of such a character as to deprive him of judgment and reason, and must exist at the precise time of executing the will."

It will hardly be insisted, we think, that the testator was actually intoxicated at the time of the execution of the will. Charles W. Cullen, who wrote the will, says emphatically, that on the 23d of July, while the will was being prepared and executed, the testator was in his office with him some two hours from about eight to ten o'clock in the morning; that "he was not drunk, and had not been drinking;" the testator himself says, "I suppose you will draw my will for me now, won't you; I have not had a drop to drink." Mr. Cullen knew the testator well and specially noted his condition at the time. The testimony that the testator was under the influence of liquor early that day when he left home, is too vague and unsatisfactory to be relied on. We think it manifest,

therefore, that at the time of the execution of the will, the testator was not actually drunk.

The appellant however insists, that at that time he was laboring under alcoholic dementia.

From the evidence it appears that in the month of July, 1897, on one occasion when drunk the testator went to John J. Perry to have a frame sawed for a barn, and when spoken to about the matter four weeks afterwards, did not remember anything about it. On another occasion when drunk on Sunday morning he wanted to buy hogs of Joseph H. Lingo; when told it was Sunday he said nothing and went away. On another occasion when drunk, while driving home from Oak Orchard, he cut the reins from out of the hands of his wife with a knife because she would not give them to him when asked. Dr. Jones testifies that the testator insisted on paying him ten dollars in the afternoon of July 23d, 1897, when his bill was only eight dollars. The testimony in these cases, and some other instances proved, show that on each occasion the testator was actually drunk. The incidents detailed when carefully considered, are naturally and reasonably accounted for by that fact. They bear the marks of an intoxicated rather than of an insane man.

That the testator at times drank to excess is clearly proven, and when drunk he talked and acted as drunken men will. That the use of intoxicants had so unsettled his mind as to deprive him of testamentary capacity at the time of the execution of the will is not proved by the testimony.

From the evidence as a whole the following conclusions are safely reached:

1. During all the time in controversy the testator attended to his business; managing his real estate, buying and selling property, dealing with his tenants, making and giving notes and transacting business, without detriment to his estate so far as the testimony shows.

2.   He recognized and admitted his unfortunate appetite for intoxicants, deplored it, and voluntarily took the most efficient means known to modern science to check it.   His statements and admissions to this effect, somewhat relied on by the appellant as showing dementia, are rather the badges of sanity; of one who understands and judges rightly, but lacks the power to control a masterful appetite.   Clearly he understood and appreciated his condition.

3.   The evidence of Dr. Jones, the testator's family physician, and a witness for the appellant, throws much light on this subject.

When asked by appellant's counsel, " Did Phillips ever have what is familiarly known as the rams?" he answered, " Not severe," and to the question, " What was his condition when he had them?" he answered, " Oh, he was not delirious, or anything of that kind, but he was very, very nervous."   From observation and examination the actual effect of intoxicants upon the mind of the testator is here stated by his regular physician, and is inconsistent with the theory of dementia.   This is significant testimony, although it is accompanied and qualified by the after statement that the witness did not think the testator capable of making a will; with the added qualification that that was a hard question to answer, and that he was not an expert.   As to the existence of alcoholic dementia at the time of the execution of the will, Mr. Cullen testifies that without doubt the testator was of sound and disposing mind and memory, " in every respect competent to make a will."   He speaks not only as a lawyer, but as a trusted business acquaintance and friend of the deceased.   Mr. Cullen is conceded to be entirely capable of correct judgment on this point.   He speaks of testamentary capacity at the precise time of the execution of the will.   It was his duty to ascertain the fact of competency at that time.   His attention was especially called to this subject.   For a number of years he had known the testator's habits and had refused to write the will on July 16th, one week before, because Phillips was then under the influence of intoxicants.   This testi-

mony is very strong. It is corroborated by George W. Jones, the surviving attesting witness to the will.

4. The purpose of Phillips to dispose of his property as set forth in the will, seems to have been clearly formed and consistently adhered to. He expressed the same intention both on the 16th and 23d day of July. The will accords with all his declarations on the subject. In this appears a stable and constant mind.

The appellant strenuously insists that Phillips was incapable of making a will, because the provisions of the will itself are unnatural, and contrary to the ties of blood and affection; in that the wife only takes thereunder one-half the real estate for life, while the residue of the estate goes to a stranger in blood instead of to the collateral heirs of the testator, there being no issue.

We are not prepared to say that a will which makes the same provision for a wife, which the law prescribes in the case of intestacy indicates insanity on the part of the testator. It must be considered that the law in its wisdom prescribes that as her portion of the decedent's real estate in case of intestacy.

Not much light is thrown upon the domestic relations of the decedent by the evidence, or of his relation with his next of kin.

Mrs. Phillips testified that she and her husband lived amicably together except when he was drinking. According to her testimony he was drinking much of their married life. She does not state on what terms they lived when he was drinking; this is left to conjecture.

It is manifest from expressions used by Phillips that he had reasons for such a disposition of his estate, although he did not state them. We do not know what they were, but may not conclude from the provisions of the will alone that they sprang from an insane mind.

After the most careful consideration of the case, we are clearly of the opinion that the allowance of the will should be affirmed, and so order.